**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| 1ST SOURCE BANK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:12CV480-PPS/CAN |
| | ) | |
| FIRSTSOURCE SOLUTIONS LIMITED, | ) | |
| FIRSTSOURCE GROUP USA, INC., | ) | |
| FIRSTSOURCE ADVANTAGE, LLC, | ) | |
| FIRSTSOURCE FINANCIAL SOLUTIONS, LLC, | ) | |
| and FIRSTSOURCE SOLUTIONS USA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

It doesn't take a trademark scholar to figure out what this case is about; one glance at the above case caption reveals much of what needs to be said. Plaintiff 1st Source Bank is, as the name denotes, a bank which has been using the designations "1ST SOURCE" and "FIRST SOURCE" as trade names and service marks since 1981. It provides services in the fields of banking, financing, insurance underwriting and trusts, as well as for investment advice and vehicle procurement services.[1] The five Firstsource defendants (all related to one another) are named in this action over their use of similar service marks. 1st Source alleges that the defendants, who are in the business of debt recovery and collections, have started using FIRSTSOURCE as a mark and have registered the domain name "firstsource.com." The first amended complaint makes claims of service mark infringement, unfair competition and dilution, and seeks cancellation of the registrations of defendants' FIRSTSOURCE marks. The defendants

---

[1] 1st Source Bank's five federal registrations of these marks are listed in ¶17 of the first amended complaint.

have filed a motion to dismiss or transfer the case, in which the threshold issue raised is personal jurisdiction.

**<u>Personal Jurisdiction</u>**

"In a federal question case such as this one, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston*, 623 F.3d 440, 443 (7th Cir. 2010). Indiana's long-arm statute allows jurisdiction so long as it's consistent with the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Ind.R.Trial.P. 4.4(a). As a result, the state statutory and federal constitutional inquires merge, and the determinative issue is whether the exercise of jurisdiction over these defendants comports with the federal Due Process Clause. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Where, as here, the matter of personal jurisdiction is raised in a motion to dismiss and no evidentiary hearing is required, the burden is on the plaintiff to make a *prima facie* showing of the existence of personal jurisdiction. *GCIU-Employer Retirement Fund v. Goldfarb Corporation*, 565 F.3d 1018, 1023 (7th Cir. 2009); *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). 1st Source "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research*, 338 F.3d at 782, quoted in *Central States v. Phencorp Reinsurance Company*, 440 F.3d 870, 878 (7th Cir. 2006). That is neither here nor there in this case since the Firstsource defendants do not dispute facts asserted and relied upon by plaintiffs, but rather dispute their legal significance for purposes of the personal jurisdiction analysis.

The basic due process standards for personal jurisdiction are long-established and well known. "A defendant is subject to personal jurisdiction in a particular state only if the defendant had 'certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Mobile Anesthesiologists*, 623 F.3d at 443, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Due process is offended unless a defendant could "reasonably anticipate being haled into court" in a particular state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). Another take on the constitutional question is whether "the defendant 'purposefully avails itself' of the benefits and protections of conducting activities in the forum state." *Mobile Anesthesiologists*, 623 F.3d at 444, quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Depending on the scope of a party's contacts with the forum state, personal jurisdiction can be categorized as general or specific. General jurisdiction exists where a defendant's contacts with the forum state involve the conduct of "continuous and systematic general business." *GCIU*, 565 F.3d at 1023. By contrast, specific jurisdiction exists in a suit arising out of or directly related to the defendant's contacts with the forum state, even where the contacts are not so continuous and systematic as to support general jurisdiction. *Id*. Here the plaintiff 1st Source contends that both species of personal jurisdiction are present.

The Seventh Circuit has prescribed a three-step inquiry for determining specific jurisdiction:

> (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and

3

justice; (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit.

*Central States v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000).

As noted above, the facts relevant to personal jurisdiction are not in dispute here, only their significance under the applicable personal jurisdiction standards. The Firstsource defendants submit no evidence in support of their motion, and do not challenge the facts supported by the evidence plaintiff 1st Source submits in opposition. Given the very nature of this case, there is a hodgepodge of entities which use variants of the name "First Source." I do my best to clarify each entity in my discussion below while recognizing that it can get a bit confusing.

Defendant Firstsource Solutions Limited is a company organized under the laws of India with its principal place of business in Mumbai. Firstsource Group USA, Inc. is a Delaware corporation with its principal place of business in Louisville, Kentucky. Firstsource Financial Solutions, LLC and Firstsource Solutions USA, LLC are also organized under Delaware law and share a principal place of business in Louisville, Kentucky. The last defendant – Firstsource Advantage, LLC – is both organized under New York law and has its principal place of business there.

Firstsource Advantage, Firstsource Financial Solutions and Firstsource Solutions USA, LLC are registered with the Indiana Secretary of State, each with a registered agent located in Indianapolis. [DE 23-7 at 45, 48.] Firstsource Advantage is registered as a collection agency with the Indiana Securities Division. [DE 23-7 at 36.] Defendants Firstsource Financial Solutions, LLC and Firstsource Advantage LLC use the FIRSTSOURCE mark in connection with debt collection activities in Northern Indiana. It appears that defendants Firstsource

4

Advantage and Firstsource Financial Solutions are now the same entity; they merged on September 29, 2011. [DE 23-14 at 35; DE 29 at 12, n.3.] They have offices located at 1232 West State Road 2 in LaPorte, Indiana, on which the FIRSTSOURCE mark is prominently displayed. [DE 23-7 at 2-7.] This Firstsource location is within a half-mile of one of 1st Source Bank's banking centers, located at 2044 West State Road 2 in LaPorte. [DE 23-4 at ¶5.]

Firstsource Financial Solutions and Firstsource Advantage have filed hundreds of actions against Indiana residents to collect debts in the courts of St. Joseph County, Indiana, and Elkhart County, Indiana. [DE 23-8 and 23-9.] Firstsource Solutions USA, which offers collection services in the medical industry, has also brought suit in the Indiana courts concerning its provision of debt collection services to an Indiana hospital in Monroe County. [DE 23-12.] So these three Firstsource entities clearly do business in Indiana, have availed themselves of courts in Indiana, and the exercise of jurisdiction over them by this Indiana court would not offend due process. Each of them can reasonably and fairly expect to be haled into court in Indiana based on their business operations and prior litigation within the state. In other words, since these three defendants conduct debt collection business in Indiana and regularly hale others into the courts of Indiana, then they too can expect to be haled into an Indiana court. What's sauce for the goose is sauce for the gander.

But even more to the point are the specifics of this lawsuit. The plaintiff 1st Source alleges actual and potential confusion resulting from the use by these three defendants – Firstsource Advantage, Firstsource Solutions and Firstsource Financial Solutions – of the FIRSTSOURCE mark in connection with debt collection services. The declaration of Lorra Junk, who works in collections for plaintiff 1st Source, attests that in the past two years she has

received "numerous misdirected letters, bankruptcy notices, and court filings that should have been sent to Firstsource Financial Solutions, LLC, or Firstsource Advantage, LLC." [DE 23-3 at ¶3.][2] Pardon the pun, but one might refer to the receipt of these letters and filings as "junk mail," at least from the plaintiff's point of view. Moreover, Junk has fielded between 50 and 75 telephone inquiries and numerous written requests about credit bureau reports, including from 1st Source customers, revealing confusion between Firstsource entities and 1st Source Bank. *Id*. at ¶¶4-7. She has also dealt with approximately 50 bankruptcy filings by 1st Source customers in which the debt was erroneously reflected as owing to the defendants Firstsource Financial Solutions or Firstsource Advantage, so that bankruptcy notices were misdirected to the defendants and 1st Source Bank did not receive the appropriate notice. *Id.* at ¶8. [These would most decidedly *not* be junk mail from the plaintiff's point of view.] Junk has also received bankruptcy notices that should have been directed to one of the Firstsource entities. *Id.* at ¶9. Besides impacting 1st Source Bank in Indiana, this confusion has impacted Indiana residents who were customers of either plaintiff 1st Source Bank or Firstsource. *Id*. at ¶6, 7, 8 and 10.

The more than minimal Indiana contacts of Firstsource Advantage, Firstsource Financial Solutions and Firstsource Solutions USA, involving the challenged use of FIRSTSOURCE marks in connection with debt collections, are directly related to the claims asserted by 1st Source in this case. 1st Source has clearly made at least a *prima facie* showing that specific personal jurisdiction can be exercised over these three defendants.

---

[2] Junk names three specific Indiana residents among dozens of persons who have mistakenly contacted 1st Source Bank about references to "Firstsource" appearing on their credit reports. *Id*. at ¶7.

The question of personal jurisdiction as to the two "parent" entities requires a closer look. Defendant Firstsource Solutions Ltd. – the Indian company – is alleged to be the ultimate parent company of all other defendants, and the immediate parent of defendant Firstsource Group USA, which in turn is the immediate parent of the remaining three defendants. These two defendants are the owners of the registrations of the FIRSTSOURCE mark and the FIRSTSOURCE Design mark, and they in turn license use of the marks to the three subsidiary defendants, such as for use on the offices on West State Road 2 in LaPorte, Indiana. The LaPorte, Indiana site is listed on the parent company's website where it touts its "Scalable, Global Delivery Platform" for services. [DE 23-14 at 28.]

The PTO history on the defendants' registration of FIRSTSOURCE underscores this coordinated usage and control of the marks. The FIRSTSOURCE Design mark was registered first in 2008. When the Firstsource parent company later sought registration of FIRSTSOURCE, the PTO raised a question about likely confusion between the two marks. In response to the Office Action, applicant Firstsource Solutions Limited – the ultimate parent company here – sought to assuage the concern by reassuring the PTO about its relationship with the wholly-owned subsidiary which owned the registration of the FIRSTSOURCE Design mark. The Declaration of Darryl Pereira, Vice President – Legal for Firstsource Solutions Limited, attested that, "[a]s the parent company, Applicant controls the activities and operations of Firstsource USA, including the selection, adoption and use of trademarks." Declaration in Support of Application 85/160,399 at ¶2, filed Aug. 8, 2011.[3]

---

[3] Publicly accessible at http://tsdr.uspoto.gov/#caseNumber=85160399.

Assuring the PTO that the consumer would correctly perceive the "technically separate entities" as "a single Firstsource entity," Pereira attested that "the services offered by Firstsource USA and Applicant are, in fact, the same." *Id.* at ¶¶3, 5. The parent company expressly represented that "[d]ue to the fact that Firstsource USA is a wholly-owned subsidiary of Applicant, and due to the fact that Applicant controls the activities of Firstsource USA and all usage of the 'FIRSTSOURCE' marks globally, there is a unity of control over Applicant's mark and the cited registration." *Id.* at ¶6. So by their own admission, the parent Firstsource entities direct and control their subsidiaries' usage of the FIRSTSOURCE marks in the performance of the same services throughout the companies and to achieve a global brand.

In addition, the prosecution history of defendant's FIRSTSOURCE mark contains an Office Action by the PTO initially refusing to register the mark due to the likelihood of confusion with plaintiff's FIRST SOURCE BANK, 1ST SOURCE and 1ST SOURCE BANK Design marks. [DE 23-14 at 4]. Based on applicant Firstsource Solutions USA, Inc.'s response, the PTO withdrew its confusion objection. For present purposes, the raising of the issue demonstrates defendants' knowledge of 1st Source Bank's marks and reflects an awareness of the risk that using FIRSTSOURCE would be "injuring valuable property located in Indiana." *Indianapolis Colts v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir. 1994). Although defendant Firstsource's arguments for distinguishing the marks carried the day with the PTO, the circumstances support the exercise of personal jurisdiction over the parent companies in light of their intentional actions allegedly causing foreseeable harm to 1st Source in this forum, namely their use of the FIRSTSOURCE marks in the conduct of debt recovery

8

services in the same region in Indiana in which they know 1st Source bank to be engaged in arguably the same services.

In sum, the parent Firstsource entities own and control the marks at issue in this case, and those marks are given to and used by their subsidiaries in various business activities within the state of Indiana as part of the parent entities' global business strategy which they refer to as their "Global Delivery Platform." These actions allegedly impact plaintiff 1st Source Bank by means of actionable infringement, unfair competition and dilution. As a result, I am persuaded that a *prima facie* showing of specific personal jurisdiction is made over the parent entities as well. On all the facts demonstrated and in view of the nature and basis of the claims asserted, the maintenance of this action against those parent defendants is not currently shown to offend traditional notions of fair play and substantial justice.

**Failure to State a Claim**

With the threshold issue of personal jurisdiction out of the way, I turn next to Firstsource's challenge to the first amended complaint under Rule 12(b)(6). (In discussing the motion to dismiss, for simplicity's sake, I will refer to all of the defendants collectively as Firstsource). The motion argues that the pleading "lacks the plausible grounds for relief required" to overcome a motion contending that it fails to state a claim upon which relief can be granted. [DE 16 at 1.] The Supreme Court has held that: "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Construing this standard, the Seventh Circuit advises that: "[i]n reviewing the sufficiency of a complaint under the plausibility standard announced in

9

*Twombly* and *Iqbal*, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. Oct. 20, 2011). In sum, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010). And "the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *McCauley*, 671 F.3d at 616, quoting *Twombly*, 550 U.S. at 557.

The Firstsource defendants contend that in the Lanham Act counts for infringement, unfair competition and dilution "the factual allegations do nothing more than infer the mere possibility of misconduct." [DE 16 at 1-2.] To the contrary, the first amended complaint alleges that the Firstsource defendants are engaged in providing services of the same kinds as banks such as plaintiff, including debt collections [DE 10 at ¶19] and that they use the name and mark FIRSTSOURCE in connection with those services [*id.* at ¶20], resulting in confusion, mistake or deception as to the origin, sponsorship or approval of the services provided by defendant Firstsource on the one hand, and plaintiff 1st Source on the other [*id.* at ¶25]. This is an adequate pleading of the infringement claim in Count I.[4]

Confusion between the competing marks is a matter pertinent to all of 1st Source's claims. To the extent that Firstsource suggests that it has not been adequately pled, 1st Source points out that the first amended complaint expressly alleges that the use of FIRSTSOURCE has caused

---

[4] Defendants make what I consider to be nearly laughable arguments when they try to make hay out of the first amended complaint's failure to precisely and expressly (and entirely unnecessarily in my view) allege that the "1ST SOURCE," "FIRST SOURCE BANK" and "FIRSTSOURCE" marks are similar, or that defendants' debt recovery and collections services are of the same kind as plaintiff's. There are some things that are just too obvious to discuss.

confusion, and that this is an allegation of fact rather than a legal conclusion. [DE 10 at ¶15.] The record compiled by 1st Source in response to the personal jurisdiction challenge is replete with evidence of actual confusion, which perhaps explains why Firstsource offers its 12(b)(6) arguments before its challenge to personal jurisdiction (although the latter is a threshold issue legally). But specific instances of confusion need not be pled in the complaint in order to state a claim.

*Twombly* does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "The *Twombly/Iqbal* 'plausibility' determination is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Engel*, 710 F.3d 698, 709 (7th Cir. 2013), quoting *Iqbal*, 556 U.S. at 679. In the particular context of this case, the use of FIRSTSOURCE in the same debt collections field as 1st SOURCE is used clearly presents a story that hangs together and plausibly suggests a right to relief on grounds of infringement, unfair competition and dilution.

As for unfair competition in Count II, the first amended complaint alleges that the Firstsource defendants' use of service marks constitutes the use of a false designation of origin, and a false representation that Firstsource services are affiliated with 1st Source Bank. [*Id.* at ¶28]. For the dilution claim pled in Count III, the first amended complaint goes on to assert based on the same facts that Firstsource's conduct dilutes the distinctive quality of 1st Source's previously famous "FIRST SOURCE" mark. [*Id.* at ¶32.] The pleading gives fair notice of what the claims are and the grounds on which they rest, as well as allegations plausibly suggesting a right to relief.

Count III also asserts a claim of dilution under Indiana law. Under Ind. Code §24-2-1-13.5(a), a plaintiff has a dilution claim only with respect to "fanciful marks" or where "the other person's use tarnishes the reputation of the famous mark." Firstsource's argument that 1st Source hasn't adequately pled this Indiana claim founders on the distinction-without-a-difference between "tarnishing" reputation and "injuring" it, as the first amended complaint expressly alleges in ¶33.[5] With respect to Counts I, II and III, the first amended complaint certainly supplies "enough facts to establish a reasonable expectation that discovery will yield evidence supporting plaintiff's allegations." *Anago Franchising, Inc. v. IMTN, Inc.*, 477 Fed.Appx. 383, 385-6 (7th Cir. 2012), citing *Twombly*, 550 U.S. at 556.

Firstsource contends that the entire complaint is subject to dismissal for plaintiff's failure to properly assert claims against each defendant. This is an entirely unpersuasive challenge to the first amended complaint's use of the collective "Firstsource" to refer to all five defendants (as I am doing here). The first amended complaint clearly makes its factual allegations concerning the unlawful use of the service marks against *all* the Firstsource defendants (and thereby against each of them). In the context, the allegations are not vague or confusing. 1st Source alleges that each of the defendants is using the FIRSTSOURCE mark in a manner that constitutes infringement of 1st Source's marks, unfair competition, and unlawful dilution. Firstsource fails to demonstrate what sorts of distinctions need to be made in the pleading of these claims, or why the failure to distinguish between the defendants (all of whom are alleged to be doing the same things in violation of the Lanham Act) is fatal to the first amended complaint.

---

[5] In any event, Firstsource does not persist with the argument in its reply.

Count IV seeks cancellation of the federal registrations of the FIRSTSOURCE mark owned by Firstsource Solutions Limited and the FIRSTSOURCE Design mark owned by Firstsource Group USA, Inc., based on the likelihood of confusion, mistake or deception with respect to the 1ST SOURCE and FIRST SOURCE marks. For that relief, 1st Source invokes 15 U.S.C. §1052(d). On its face, that provision is merely the statutory basis for the Patent & Trademark Office to deny registration in the first place to a mark that so resembles a previously registered mark that its use will likely cause confusion and mistake, or deceive the public, when used in connection with the goods of the applicant. Firstsource's argument for dismissal of Count IV is that cancellation is a remedy available for Lanham Act violations, and not a cause of action in its own right, citing *J&D Home Improvement, Inc. v. Basement Doctor, Inc.*, 247 F.Supp.2d. 575, 578 (D.Del. 2003), affirmed by *J&D Home Improvement, Inc. v. Basement Doctor, Inc.*, 90 Fed.Appx. 616 (3rd Cir. 2004).

Under Section 37 of the Lanham Act, 15 U.S.C. §1119, the court has authority "[i]n any action involving a registered mark" to "order the cancellation of registrations, in whole or in part." In particular procedural circumstances, the court in the *J&D Home* case cited by Firstsource determined that §1052(d) did not create a cause of action sufficient to support subject matter jurisdiction. That case was brought under the Declaratory Judgment Act in response to the defendant's initiation of cancellation proceedings before the Trademark Trial and Appeal Board, and the sole count of the complaint sought a determination of the parties' concurrent use rights in their rival service marks. *J&D Home Improvement*, 247 F.Supp.2d at 578. The district court there cited a case agreeing that a sole claim for cancellation does not create jurisdiction, but observing that, thanks to §1119, cancellation *can* be sought in a case in which

13

there exists an independent basis for federal jurisdiction involving the registered mark at issue. *Id*. at 578-79, citing *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 241 (S.D.N.Y. 2000).

Similarly, in affirming the district court, the Third Circuit indicated that "although a court may determine that concurrent registration is appropriate..., it may only do so in the context of actions over which courts already have subject matter jurisdiction on some other basis." *J&D Home Improvement*, 90 Fed.Appx. at 618-19. 1st Source Bank cites a number of federal cases in which courts have taken no exception to a separate count for cancellation of registrations. *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346 (8th Cir. 1984) [counts for cancellation, false designation of origin, and trademark infringement]; *Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213 (8th Cir. 2008) [claims for copyright infringement, common law trademark infringement, federal unfair competition, and cancellation]; *Informix Software, Inc. v. Oracle Corp.*, 927 F.Supp. 1283 (N.D.Cal. 1996) [claims for cancellation of trademark, unfair competition and trade libel]; *Central Mfg. Co. v. Brett*, 78 U.S.P.Q.2d 1662 (N.D.Ill. 2005) [counterclaim for cancellation in an action asserting spurious claims for trademark infringement, false designation of origin and unfair competition].

In reply, Firstsource retreats on its argument that Count IV should be dismissed because cancellation cannot be brought as a separate cause of action, and merely argues that the dismissal of Counts I, II and III would deprive the court of the necessary independent jurisdictional basis for entertaining a separate count for cancellation. [DE 29 at 8.] Because cancellation can be entertained along with the separate Lanham Act claims of infringement, unfair competition and

dilution, which are not being dismissed for failure to state a claim, the cancellation count in Count IV is not shown to be subject to dismissal.

**Venue & Transfer of the Case**

Firstsource's motion also challenges venue in the Northern District of Indiana, and urges transfer of the case to the Western District of Kentucky, where several of the defendants are located. The venue statute, 28 U.S.C. §1391(b), provides that a civil action may be brought in a judicial district in which "any defendant resides, if all defendants are residents of the State in which the district is located," or a district in which a substantial part of the events giving rise to the claim occurred, or if those provisions don't yield a district with venue, then in any district "in which any defendant is subject to the court's personal jurisdiction." Firstsource points out that no defendant is organized under the laws of Indiana or has its principal place of business here, and argues that the first amended complaint does not establish that a substantial portion of the events underlying the suit occurred in this district.

But even if I am not persuaded that 1st Source it has shown that a substantial part of the events giving rise to the suit occurred in this district (which I may be), venue is proper here under §1391(b)(3) if "any defendant is subject to the court's personal jurisdiction." Because I have determined that all the defendants are subject to the court's personal jurisdiction, the venue statute is satisfied. Firstsource appears to have jettisoned the argument in any event, as the issue of venue is not referenced in the reply brief.

**Motion for More Definite Statement**

Finally, Firstsource argues that if all else in the motion has failed, I should order 1st Source Bank to file an amended complaint making a more definite statement of its claims.

15

Fed.R.Civ.P. 12(e) authorizes such an order where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." A motion for more definite statement should be granted "only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question." Advisory Committee Note to Rule 12(e).

Firstsource complains that 1st Source Bank has not specified "the location of the alleged acts and the alleged injuries." [DE 16 at 17.] While the information that Firstsource seeks is certainly relevant (and some of the answers are provided in the plaintiff's response brief), 1st Source Bank is simply not required to put all relevant information into the complaint. To the contrary, Rule 8(a) requires plaintiffs to limit themselves to a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The first amended complaint provides sufficient notice of the claims and allegations for Firstsource to reasonably frame an answer, and the additional information defendants seek can be obtained in the course of discovery. Thus, the motion for more definite statement will be denied.

**ACCORDINGLY:**

Defendants' motion to dismiss or in the alternative to transfer venue or in the alternative for more definite statement [DE 15] is DENIED.

Plaintiff's motion for leave to take discovery on the issues of personal jurisdiction and venue [DE 24] is DENIED WITHOUT PREJUDICE AS MOOT.

**SO ORDERED.**

**ENTERED: April 24, 2013**

/s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT**